**WINTER GARDEN LAND CO. et al. v. ZA-VALLA-DIMMIT COUNTIES WATER IM-PROVEMENT DIST. NO. I. (No. 2136.)**

Court of Civil Appeals of Texas. El Paso. April 5, 1928.

Rehearing Denied May 3, 1928.

**I. Appeal and error ⟨⟩66—Appeals generally lie only from final judgments.**

Except for certain exceptions, appeals may be prosecuted from final judgments only.

**2. Judgment ⟨⟩565—"Dismissal without prejudice" does not dispose of case on merits or bar subsequent suit.**

"Dismissal without prejudice" is not a dismissal on the merits and does not bar subsequent suit upon the same cause of action.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Without Prejudice.]

**3. Appeal and error ⟨⟩78(4)—Judgment dismissing without prejudice all issues not affirmatively disposed of held "final judgment" for purposes of appeal.**

Judgment by which all issues not affirmatively disposed of were dismissed from suit without prejudice, while not a final judgment in the sense that it would be res judicata of the issues dismissed, was nevertheless a final judgment in the sense that an appeal could be. taken therefrom.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

**4. Appeal and error ⟨⟩866(1)—Reviewing court held without jurisdiction to pass upon merits of issues dismissed without prejudice by trial court's judgment.**

Where issues in trial court were not disposed of upon their merits, but were dismissed without prejudice, reviewing court had no jurisdiction to consider the issues so dismissed upon the merits, but could remand case and require trial court to pass upon the issues.

**5. Appeal and error ⟨⟩1177(2)—Trial court's dismissal without prejudice of issues properly tendered and joined, without parties' consent to dismissal, held error requiring remand.**

Trial court's dismissal without prejudice of issues properly tendered, joined, and insisted upon *held* error, as tending to produce multiplicity of suits, where no consent to dismissal was shown, and trial court was required to dispose of the dismissed issues upon their merits.

Error from District Court, Dimmit County; J. F. Mullally, Judge.

Action by the Winter Garden Land Company against the Zavalla-Dimmit Counties Water Improvement District No. 1 and the Winter Garden Irrigation Company. From the judgment, plaintiff and defendant last named bring error. Reversed and remanded.

J. D. Dodson, U. S. Algee, and Frank H. Booth, all of San Antonio, for plaintiff in error.

Grover C. Jackson, of Crystal City, M. J. Arnold and Arnold & Cozby, all of San Antonio, for defendant in error.

HIGGINS, J. The parties to this litigation are the Winter Garden Land Company, the Winter Garden Irrigation Company, and the Zavalla-Dimmit Counties Water Improvement District No. 1, all corporations, and herein respectively designated as the land company, the irrigation company, and the improvement district. The improvement district was organized about March 3, 1925, under chapter 2, tit. 128, R. S. 1925.

The irrigation company owned the Nueces river dam and reservoir and Espantosa Lake, in Zavalla county and Dimmit county, and a system of canals, ditches, and laterals to convey water for the purpose of irrigation from the river reservoir to surrounding land. The land company owns land thus irrigated.

On October 11, 1924, the improvement district was in process of organization for the purpose, among other things, of issuing bonds to buy the property of the irrigation company and the construction of another storage reservoir in the Nueces river at a point to be thereafter determined. Upon the date mentioned the irrigation company and R. A. Taylor and others, the latter acting in behalf of the proposed improvement district, entered into a contract whereby the former agreed to sell and Taylor and others agreed to buy the Nueces river reservoir and dam

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and Espantosa Lake, "together with all its water rights and water appropriations thereto in any wise belonging, including therein all and every property and property right in any wise appertaining thereto, except the pumping plant and appurtenances installed on said Nueces river reservoir, but all subject, nevertheless, to the provisions and reservations contained in paragraphs 4 and 5 hereof."

Pursuant to the contract and in consideration of $61,700 cash, the irrigation company, by deed dated October 12, 1925, conveyed to the improvement district "the Nueces river reservoir and dam and Espantosa Lake situated in Zavalla-Dimmit counties, Tex., together with all and singular the water rights and water appropriations thereto in any wise belonging, including therein all and every property and property rights in any wise appertaining thereto, except the pumping plant and appurtenances thereto installed on the Nueces river reservoir, but all subject nevertheless to the provisions and reservations contained in paragraphs 4 and 5 of said contract."

The contemplated reservoir referred to in the preliminary contract was later built at a point about 12 miles up the Nueces river from the reservoir and dam conveyed to the improvement district by the irrigation company.

The land company is within the improvement district and entitled to be supplied with water for irrigation and domestic purposes.

We will hereafter refer to the Nueces river reservoir, conveyed to the improvement district by the irrigation company, as the lower reservoir, and the one up the river, constructed by the district, as the upper reservoir. The water to irrigate the land owned by the land company is taken from the lower reservoir. When the water in the lower reservoir stands at a certain level it will flow by gravity through the system of canals, ditches, and laterals above mentioned to the land of the land company and others.

In order to maintain such a level it would be necessary to permit the escape of water from the upper to the lower reservoir. This the improvement district has refused to do and has required the owners of land irrigated from the lower reservoir to establish their own pumps upon such reservoir, pump their own water, and convey same to their respective lands.

The improvement district justifies its refusal to so maintain the water level in the lower reservoir upon the ground of necessary conservation of its water supply, asserting it would entail useless waste of the water supply by additional leakage and evaporation if the water level in the lower reservoir be maintained at a level which would permit its flow by gravity through the canals, laterals, and ditches to the lands supplied from such reservoir. The improvement district

also asserts that to so maintain the water level would be a discrimination against landowners supplied from the upper reservoir who are required to pump their own water from the upper reservoir and convey it to their own lands.

The improvement district has also adopted and is enforcing certain rules and regulations governing the supply and distribution of water to users of which the land company complains in this suit.

This suit was brought by the land company against the improvement district and the irrigation company. The gravamen of the petition is that the improvement district claims the deed to it from the irrigation company did not convey the system of canals. ditches, and laterals, and it is under no obligation to deliver water through the same to the land company's property line; that the improvement district refuses to maintain the water level in the lower reservoirs so that water will flow by gravity to plaintiff's land; that eight rules or regulations, specifically pleaded, adopted by the district, are discriminatory, unreasonable, and void. Judgment was prayed as follows:

"(1) Establishing and adjudging the title and ownership of said canal system and the duty and obligation of the defendants to operate and maintain the same, and for a perpetual injunction against them and each of them enjoining upon them to operate and maintain the same and without interference with the other.

"(2) Establishing and decreeing that it is the duty and obligation of the defendants and each of them to furnish an adequate supply of water to all consumers in Winter Garden to irrigate their lands and for domestic purposes, delivered at their respective property lines, and for an injunction requiring them and each of them to supply and furnish water accordingly.

"(3) That the defendants and each of them be required by injunction to furnish without discrimination between consumers; that the priorities, if any, between the consumers to so receive water be established, fixed, and determined.

"(4) That the defendant district be required by injunction to maintain the level of the water in said lower reservoir to the highest point so long as water is available in said upper reservoir, so that said Winter Garden owners may have and take water by gravity flow from said lower reservoir.

"(5) That the defendant district be perpetually enjoined from taking in and adding other lands to the territory to be irrigated from said reservoirs.

"(6) That the rules aforementioned be declared, held, and adjudged to be unreasonable, unjust, and discriminatory, and that it be perpetually enjoined from enforcing the same, and that it be required to enforce all reasonable rules impartially and without discrimination.

"(7) For general relief."

The irrigation company, of whose capital stock the land company owns 80 per centum, answered admitting the material allegations

of the petition. It further set up that it was intended by the deed from it to the improvement district that the latter should acquire all of its physical properties and rights with reference to the then existing irrigation system, but if mistaken as to this, then it admitted its obligation to operate the canal system and asked judgment against the improvement district for the perpetual right to take water from the reservoir for delivery to the lands entitled thereto.

The improvement district answered by general denial and special pleas, which may be summarized as follows: That it did not acquire the system of canals, ditches, and laterals, and if the deed be construed as conveying same it was the result of mutual mistake, and it asked that the deed be reformed so as to exclude such system; justified its refusal to maintain the water level in the lower reservoir as the plaintiff demanded, upon the necessity of conserving its water supply and upon the further ground that it would be a discrimination in favor of plaintiff when other users had to pump their water; justified the rules and regulations adopted by it as reasonable and necessary.

The foregoing statement of the voluminous pleadings of the parties is but a brief outline of same, but is sufficient to show the issues presented for adjudication.

The case was submitted upon special issues, which, with the answers returned, and the judgment rendered, are as follows:

"Question No. 1: At the time of the delivery of the deed executed by the Winter Garden Irrigation Company to the Zavalla-Dimmit Counties Water Improvement District No. 1, did both parties to such deed mutually agree that the canal system described in the plaintiffs' pleading should not be included by said deed? Answer yes or no.

"We, the jury, answer this question 'Yes.'

"Question No. 2: Has the Zavalla-Dimmit Counties Water Improvement District No. 1 refused at any time to let the plaintiff, Winter Garden Land Company, have water for irrigation on the same terms and conditions as other users? Answer yes or no.

"We, the jury, answer this question 'No.'

"Question No. 3: Are any of the rules adopted by said water improvement district regulating the supply of water unreasonable? Answer yes or no.

"We, the jury, answer this question 'Yes.'

"If you answer yes, state which rule or rules you find unreasonable.

"We, the jury, answer, "Compulsory use of meters.'

"Question No. 4: Do' any of said rules of defendant district materially discriminate against the plaintiff under all the conditions and circumstances in evidence? Answer yes or no.

"We, the jury, answer this question 'No.'

"Special Issue No. 1, requested by plaintiff: Is the defendant Zavalla-Dimmit Counties Water Improvement District No. 1 financially able to repair, operate, and maintain the canal system at Winter Garden?

"We, the jury, answer 'No.'

"Special Issue No. 2, requested by plaintiff: If you have answered the foregoing special issue in the negative, then you will answer whether or not such financial inability is due the failure of its officers to collect assessments levied and water charges prescribed against the land in the district and for water furnished to its consumers?

"We, the jury, answer 'No.'

"Upon consideration of the answers of the jury as aforesaid, which were received and ordered filed, it is ordered, adjudged, and decreed by the court as follows:

"(1) That the deed dated October 12, 1925, made, executed, and delivered by the Winter Garden Irrigation Company to the defendant Zavalla-Dimmit Counties Water Improvement District No. 1, recorded in volume 40, pp. 470 et seq., of the Deed Records of Dimmit County, Tex., be and the same is hereby reformed so as to exclude therefrom the canals, ditches, and laterals at the Winter Garden farms, and that the title to said canals, ditches, and laterals and rights of way therefor be and the same is hereby reinvested in the Winter Garden Improvement Company.

"(2) The rule No. 3 adopted by the defendant, Zavalla-Dimmit Counties Water Improvement District No. 1, on September 23, 1926, that no water user shall be entitled to or allowed to take water from any reservoir, unless he furnish a meter or pump of known capacity, situated on, at or near the line of the reservoir from which water is to be or is being taken, is unreasonable, and the same is hereby declared void.

"(3) Prior to the submission of said cause to the jury, the plaintiff, the Winter Garden Land Company, dismissed its suit in so far as it sought to enjoin said water improvement district from paying out of the proceeds of the sale of its contemplated bond issue for $36,000 certain executed by said district to Zavalla County Bank for the sum of $10,000 and to the Guaranty State Bank of Carrizo Springs for the sum of $7,500.00 and also its allegation and prayer for relief thereon wherein it claimed that block 88 of the Winter Garden farms, and 112.22 acres out of section 198 and 45.09 out of section 170, and the owners thereof, were entitled to take water from said lake for irrigation; therefore the court renders no judgment as to said issue other than dismissing said causes of action without prejudice, as requested by plaintiff.

"(4) With respect to the allegations of the plaintiff and its prayer for relief seeking to perpetually enjoin the defendant, Zavalla-Dimmit Counties Water Improvement District No. 1, from taking in and adding additional territory, it is ordered, the plaintiff not objecting, that such cause of action be and the same is hereby dismissed without prejudice.

"(5) It is further ordered, adjudged, and decreed by the court that all issues not affirmatively disposed of by this decree are hereby dismissed from this suit without prejudice.

"(6) It is further ordered, adjudged, and decreed that no part of this decree, which adjudicated matters solely between the plaintiff Winter Garden Land Company and the defendant Winter Garden Irrigation Company shall be in any way construed as increasing or diminishing any right or duty of the defendant Za-

valla-Dimmit Counties Water Improvement District No. 1, as same exists under the laws of Texas.

"(7) It is the further order of this court that the costs of this proceeding shall be and the same are hereby taxed as follows:

"Each party shall pay such costs as were caused to accrue by it and that execution may issue therefor.

"To all of which plaintiff duly excepted."

The land company and irrigation company appeal by writ of error.

This judgment fails to finally end litigation as respects the injunctive relief sought by the plaintiff in the first four paragraphs of its prayer. It neither grants nor denies same. Nor does it dispose finally of the sixth paragraph of the prayer except as respects the compulsory use of meters. It does not end litigation as respects the relief sought by the irrigation company in the event it was adjudged to be still the owner of the system of canals, ditches, and laterals.

[1] While it is not raised by the parties, the judgment presents a jurisdictional question, for with certain exceptions which have no present application appeals may be prosecuted from final judgments only. But for the 5th paragraph of the decree the failure to award the full relief sought might perhaps by implication be construed as a denial of such relief, so that the judgment would be regarded as final for the purpose of appeal as well as a final judgment which would support the plea of res judicata in a subsequent suit for the same relief. Hermann v. Allen, 103 Tex. 382, 128 S. W. 115; Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161, and cases there cited.

[2] But such implication of a denial of the relief sought cannot be indulged as respects this judgment, because under the fifth paragraph thereof these issues are dismissed without prejudice. The judgment thus affirmatively shows that these issues were not determined upon their merits. Southern, etc., v. Feldman (Tex. Com. App.) 259 S. W. 566; Hermann v. Allen, 103 Tex. 382, 128 S. W. 115; Kirk v. City of Gorman (Tex. Civ. App.) 283 S. W. 189.

A dismissal without prejudice is not on the merits and does not bar a subsequent suit upon the same cause of action. Freidenbloom v. McAfee (Tex. Civ. App.) 167 S. W. 28; Smith v. Burgher (Tex. Civ. App.) 136 S. W. 75; 2 Freeman on Judgments (5th Ed.) § 754; Black on Judgments, § 721; 23 Cyc. 1144; Van Fleet, Former Adjudication, § 45. But no hard and fast definition of "final" judgment, applicable to all situations, can be given, since its finality depends somewhat upon the purpose for which and the standpoint from which it is being considered, since it may be final for one purpose and not for another. Clearly, it is not necessary that a judgment be final in the sense that it will operate as a

bar or estoppel in another action, in order that it be appealable. Finality for purposes of res judicata and action upon the judgment are considered elsewhere. "A judgment may be final so as to authorize an appeal from the court in which it was rendered, without being final as to the subject-matter in litigation." 1 Freeman on Judgments (5th Ed.) § 27.

[3] The judgment here is not final in the sense that it is res judicata of the issues dismissed, but in the appealable sense it should be so regarded. This is true because it dismisses all issues not affirmatively disposed of by the decree and thus expressly disposes of all issues in the case. So far as the present action is concerned, all of the issues are disposed of, though as to the issues dismissed without prejudice under the fifth paragraph another action could be brought. The judgment should be regarded as final in the appealable sense.

The assignments of error and propositions presented by the plaintiffs in error for the most part relate to the refusal of the court to grant them the relief sought upon the issues dismissed without prejudice under the fifth paragraph of the judgment.

[4] Those issues, as stated above, have not been disposed of by the court below upon their merits. The relief sought has been neither granted nor denied so as to finally end litigation over such issues. In such a situation, for this court to pass upon the merits thereof would be to function as a trial court upon the issues of law and fact raised by the dismissed issues. This court has no such jurisdiction. It therefore cannot consider those issues upon their merits.

[5] It was the duty of the trial court to dispose of, upon their merits, the issues thus properly tendered and joined by the parties to this suit; to grant in whole or in part as the case demanded the relief sought or deny the same, and thus end the litigation.

The litigants had the right to so require of the court. In our opinion it was fundamental error for the court to fail or refuse so to do and by dismissal without prejudice remit the plaintiffs to further litigation over issues then properly tendered, joined, and insisted upon. Such practice produces a multiplicity of suits, and in many instances it would be impossible in a subsequent suit to obtain relief because of the bar of limitation.

Of course, by consent or for other good reason, the court may so dismiss, but there was no such consent here shown, except as to the issues dismissed in paragraphs 3 and 4 of the judgment, nor any reason apparent to justify the court in failing to dispose of the dismissed issues upon their merits.

For the error indicated the judgment will be reversed and the cause remanded for trial upon the merits and final adjudication of all issues presented. Until there has been such trial and judgment the appellate court cannot

properly dispose of the controlling questions raised and presented by this appeal.

Reversed and remanded.