## UNITED STATES FIDELITY & GUARANTY CO. v. HARDEMAN. (No. 2340.)

Court of Civil Appeals of Texas. El Paso. Dec. 12, 1929.

Rehearing Denied Jan. 9, 1930.

at $25 per week; (2) partial disability for 52 weeks at $12.50 per week; (3) hospital expenses for three weeks at $25 per week; (4) expenses of an operation, $100; (5) a penalty of 12 per cent. on the principal sum alleged to be $226; and (6) $500 as attorney's fees. Appellant filed a general demurrer and a general denial.

It is uncontradicted that appellee, who was a stenographer in the office of a law firm in Dallas, Tex., had a fall while ice skating on the 18th day of December, 1927; and that she had at that time an accident policy with appellant; that later she developed erysipelas and mastoiditis, and had an operation performed; that for some time, at least, she was totally disabled, and for another period partially so.

The case was tried to the court, and resulted in a judgment in favor of appellee for $225 for total disability, $425 for partial disability, $25 for hospital expenses, $81 as a penalty, and $250 for attorney's fees.

After the overruling of appellant's motion for a new trial, it has appealed.

### Opinion.

Appellant presents five questions for review, namely: (1) That appellee was not totally and continuously disabled from the date of the accident; (2) that the mastoiditis from which appellee suffered could not have been, and was not, occasioned by the fall; (3) that the judgment was for a greater amount than shown by the disability; (4) that the attorney's fee allowed was in excess of that authorized or permitted by the statute; and (5) that the suit was for a greater amount than was due at the time it was filed.

The policy sued upon contained, among others, the following provisions:

"Total Loss of Time. Or, if such injury shall not result in any of the losses mentioned in Schedule 1, but shall cause continuous total disability, and prevent the Insured from date of accident from performing any and every duty pertaining to his occupation, the Company will pay him the weekly accident indemnity above specified, for the period of such disability.

"Partial Loss of Time. Or, if such injury shall from the date of accident or immediately following total disability, prevent the Insured from performing one or more material duties pertaining to his occupation, the company shall pay one-half of the above specified weekly Accident Indemnity for the period of such continuous partial disability, but not to exceed a period of fifty-two consecutive weeks."

As to the first contention we must decide whether the facts here show total disability from the date of the accident which prevented Miss Hardeman from performing any and every duty of her occupation, and whether, if such total disability existed, it con-

Seay, Seay, Malone & Lipscomb, of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

PELPHREY, O. J. Agnes Hardeman, a feme sole, filed this suit against appellant to recover for disability, resulting from a fall, on an accident policy carried by her with appellant company. She prayed for recovery as follows: (1) For total disability for 9 weeks

tinued for the period of 9 weeks as allowed by the court.

Miss Hardeman's testimony pertinent to this question was:

"On December 18, 1927, I fell while skating on the ice at the Ice Palace in Dallas, Texas. That was about 8 P. M. * * * At that time I was employed by the law firm of White & Yarborough, and following the accidental injury described above, I went back to the office which was then located at 409 North Texas Building, Dallas, Texas. I have been working there for that firm going on 9 years now, and so the next morning after I was hurt I went back to work, and I continued to work until the 23rd day of December, 1927. During all that time I had pains and headaches all the time, and on the 23rd of December, I went to Oklahoma, to Tulsa, on a visit to my folks for the Christmas Holidays. I got there on the morning of December 24th, 1927. My head and ear hurt at the time. * * * I did not return to my work until February 20th, 1928. I was totally disabled from doing any kind of work for a period of 9 weeks. After the expiration of that 9 week period I was able to work part of the time, and do a part of my duties, for my employers, White & Yarborough. I am their stenographer, and I write letters, draw petitions, answers, briefs, and such other work as a stenographer for two lawyers would do. * * * From the time I fell on that ice and during that entire period of nine weeks, I was not able to work, I was not free from pain at any time during that period, but had pain constantly, in my head and was not able to work. It was a severe pain and I felt like my head had bursted open. I couldn't stand for anybody to walk across the floor or shut a door. * * * After I fell I went back to work the next morning after I fell, and I was down there at the office until December 23, 1927, but I did not do much work because there wasn't much that I could do. I was at the office doing what work I could until I went to Oklahoma to visit my folks for the holidays, and I left Tulsa on December 26th, and arrived in Dallas on the morning of the 27th. * * * From the night I was injured at the Ice Palace as I have described in my testimony, and following that injury and up until the time I went to Oklahoma, I was suffering pain all the time in my head and my ear. I was not able to work. I went to the office, but I did not do any work. I answered the telephone a little bit and stayed there a few minutes and then went on home. Just reported at the office, and sat around a while and then left and went home. I suffered pain continuously from the time I fell over the entire period of nine weeks, or until February 20th, 1928, and I now suffer pain continuously. As I state on my examination in chief, I went to the office the next day after the accident, and I also said that I did some work, but very little. I didn't stay there all day. I reported at the office each day. I do not remember that I wrote some letters before going to Oklahoma."

John White, one of her employers, testified: "During the time immediately prior to Christmas of 1927, I remember the time Miss Hardeman came to the office complaining of her head hurting her and feeling bad. From that time on she was not able to do any work. She came down to the office, and I told her to go back home, but the office is a kind of a home to her, and so she hung around down there, but she did not do anything because she was not able to do it."

In the case of Commonwealth Bonding & Casualty Ins. Co. v. Bryant (Tex. Sup.) 240 S. W. 893, the language in an accident policy was:

"Wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation."

And the Supreme Court, in passing upon the question of whether a peremptory charge against the insurer should have been given, used this language:

"The court will not give such a literal interpretation to the language of this contract, wherein the larger weekly indemnity is promised, as to practically relieve the insurer of all obligation thereunder. Such would be the effect of a decision discharging plaintiff in error from all liability if defendant in error, after his injury, could do anything required of him as a railroad conductor. Hefner v. Fidelity & Casualty Co., 110 Tex. 605-607, 222 S. W. 966. The language of the policy is fairly and justly susceptible of the interpretation, which, we think, should be given to it, that the larger indemnity was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation." Citing Fidelity & Casualty Co. v. Getzendanner, 93 Tex. 497, 53 S. W. 838, 55 S. W. 179, 56 S. W. 326; Fidelity & Casualty Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806 (W. of E. Ref.); North American Accident Ins. Co. v. Miller (Tex. Civ. App.) 193 S. W. 755 (W. of E. ref.); 14 R. C. L. 1316; 5 Joyce on Insurance (2d Ed.) Art. 3032(c); Foglesong v. Modern Brotherhood of America, 121 Mo. App. 548, 97 S. W. 240; Lobdill v. Laboring Men's Mutual Aid Ass'n, 69 Minn. 14, 71 N. W. 696, 38 L. R. A. 537, 65 Am. St. Rep. 542.

And again the court said: "Who can doubt that the insured actually believed that he had at least the stated degree of indemnity, under the policy, or that the insurer actually intended him to so believe? We are certain that any construction of the language of the policy, more favorable to the insurer, would not accomplish, but would defeat, the real intent and purpose of the contracting parties."

While the testimony of appellee is not as satisfactory on this point as it might be, yet, we think her testimony as a whole, together

with that of Mr. White, is sufficient to show that her injuries rendered her substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to her occupation, and that the judgment of the court based upon the conclusion that her disability was both total and continuous was correct.

■ The policy further provided that the appellant was protected "against loss, as hereinafter defined, resulting directly, and independently of all other causes from accidental bodily injuries," and further provides: "This policy does not cover any accidental bodily injury caused or contributed to directly or indirectly, by sickness or disease."

Appellant claims that the mastoiditis here was caused by a cold, and that under the above provisions she cannot recover.

The undisputed facts are that Miss Hardeman was a strong, active, and healthy young woman before her fall, and that immediately thereafter the left side of her face and her left ear were highly inflamed, and she suffered intense pains in her ear and head until after the operation.

The doctors express an opinion that mastoiditis usually results from a cold in the head, and that it cannot be caused from a traumatism, yet Dr. Marchman, the physician who operated on Miss Hardeman, qualifies his opinion by saying that striking the mastoid with a hammer would certainly cause it.

We think the facts are sufficient to justify the court in finding that in this case the fall was the cause of the mastoiditis, and appellant's assignment raising that question is overruled.

■ The proposition relative to the amount of attorney's fee is likewise overruled. Mr. Yarborough testified that a reasonable fee in this character of a case would be $500 basing his opinion upon the amount of work involved and upon the contingent nature of the fee. This was the only testimony offered, and the court, in that state of the record, found $250 to be reasonable. The judgment here was for $675, and we do not think the amount of fees allowed was excessive in view of all the facts.

■ The last question presented is whether the court erred in rendering judgment for 9 weeks' total disability and 34 weeks' partial disability, when only 18 weeks had elapsed between the injury and the filing of the petition, no amendment setting up an additional amount as having matured at the time of trial having been filed.

Appellee sued for 52 weeks' partial disability, the full time provided for in the policy, and we fail to see any reason why the court should not allow that part of the amount sued for shown to be due at the time of trial.

This practice was followed in the cases of State Life Ins. Co. v. Atkins (Tex. Civ. App.) 9 S.W.(2d) 290, and Southern Travelers' Ass'n v. Boyd (Tex. Civ. App.) 1 S.W.(2d) 446, Id. (Com. App.) 12 S.W.(2d) 183, and, where the amount allowed is less than the amount sued for, we fail to see any error therein.

We have concluded that no error is shown, and the judgment of the trial court is therefore affirmed.