**GREAT SOUTHERN LIFE INS. CO. v. JOHNSON.**

No. 1131—5409.

Commission of Appeals of Texas, Section B.

March 26, 1930.

1094

See, also, 294 S. W. 675.

Vinson, Elkins, Sweeton & Weems and Fred R. Switzer, all of Houston, for plaintiff in error.

R. S. Ragsdale, of Burkburnett, for defendant in error.

RYAN, J.

The Great Southern Life Insurance Company issued, on March 12, 1920, to H. I. Johnson, then a merchant at Burkburnett, Tex., a life and accident insurance policy in the sum of $20,000, payable to the wife, at his death. The policy also contains provisions for the company waiving annual premiums and the payment to the insured of one-tenth of the face of the policy, to wit, $2,000 annually for ten years upon satisfactory proof made by the insured of disability from disease or bodily injury "so that he is and will be thereby permanently, continuously and wholly prevented from performing any work for compensation or profit or from following any gainful occupation"; each installment so paid shall reduce to that extent the amount of the policy. The policy also requires the insured to, at any time, on the company's demand, furnish satisfactory proof of the continuance of such disability. The company shall have the right and opportunity to examine the insured's person, in case total disability is claimed, as often as it desires.

On December 11, 1921, Johnson was injured through the accidental discharge of a shotgun, the shot striking him about four inches above the knee in the center of the leg. As a result of an X-ray examination, it was decided to amputate the leg, which was done, leaving about five inches of the stump. About a year and a half later, a second operation was performed, but the stump has never fully healed. When he obtained the policy, Johnson was engaged in the mercantile business at Burkburnett; the business was estimated to have been worth at that time $125,000. He had never followed any other vocation than the dry goods business, either as clerk or salesman, or in business for himself. After his injury, he continued in the mercantile business for some little time, finally having to take bankruptcy proceedings.

After the injury, he paid the annual premiums maturing in March 1922, 1923, and 1924, respectively; he made no further payment of premiums.

On March 23, 1925, he filed a claim with the company for disability insisting that he was disabled to the extent specified in the policy: the company refused payment, and on March 30, 1926, he filed suit to recover the first installment of $2,000, and the difference between $1,712.40 (amount of the three premiums paid by him after his injury) and a loan of $1,250.91 which the company had made him. He also sought to have the remaining nine installments of the policy paid annually by the company.

That case was submitted to a jury on special issues, upon the answers to which the trial court rendered judgment against the company for the sum of $2,000, being 10 per cent. of the policy and $461.48, the difference between the amount of the premiums he paid after the injury and the amount of the loan, but refused to render judgment maturing the other nine installments.

The following were the issues submitted— all answered "Yes" by the jury, viz.

No. 1. Did the injury sustained by the plaintiff on or about December 11, 1921, totally disable him?

No. 2. Is said disability permanent?

No. 3. Has such disability been permanent to the present time?

No. 4. Will such disability continue for the remaining portion of plaintiff's life time?

The judgment contains this further recital: "The court further finds that the plaintiff is not entitled to recover judgment maturing the installments of $2,000.00 a year maturing in the future. This judgment in respect to future installments is without prejudice to the rights of either of the parties hereto in any litigation that may be had concerning said future installments."

This judgment was affirmed on appeal ([Civ. App.] 294 S. W. 675), and afterwards paid by the company.

The company refused to pay the next installment of $2,000 alleged to be due under the terms of the policy, and Johnson filed suit against the company therefor on November 19, 1927, together with the statutory penalty of 12 per cent. and reasonable attorney's fees, which resulted, after a trial by the court without a jury, in a judgment rendered on January 4, 1928, against the company, for the installment of $2,000, with legal interest thereon from March 23, 1927, together with $240 penalty and $750 attorney's fees.

The company's answer alleged that, since the trial of the first suit, new evidence exists showing conclusively that the plaintiff was not totally and permanently disabled within the terms of the policy, in that since January, 1926, he has been and is a duly elected and acting justice of the peace, and is now able and does actually engage in work

for compensation and profit, and follows a gainful occupation. Its prayer was that plaintiff take nothing, that the judgment in the first case be set aside, and he be restrained from asserting any right thereunder, or any liability against it on account of said policy and from prosecuting any suit or suits on said policy. Said judgment was affirmed on appeal (13 S.W.(2d) 424) by the honorable Court of Civil Appeals for the Seventh Supreme Judicial District, except that a remittitur of $250 on the attorney's fees was required by the court and entered by defendant in error.

The company's application for writ of error is based upon certain assignments of error, concretely stated as follows:

(1) Because the policy provides that before an installment thereof, claimed to be due for any given year, the result of injuries compensable thereunder can be recovered, said policy must be returned to the company for indorsement thereon, and a regular demand must be made on the company for each payment, and no recovery should be had, because the plaintiff failed to prove such tender and demand.

(2) No recovery for statutory attorney's fees and penalty should be had because plaintiff below did not allege a proper demand upon the company after the installment became due and before suit was filed, nor did he allege a contract or obligation on his part to pay a fee to the attorney.

(3) That the former judgment of July 9, 1926, which expressly provides "in respect to future installments it is without prejudice to the rights of either of the parties in any litigation that may be had concerning said future installments," is not res judicata that plaintiff was wholly prevented from performing any work for compensation or profit, or from following any gainful occupation, after its rendition and before any subsequent installment became due.

(4) That there was no proof showing the plaintiff to have been, at the time of the second trial, permanently, continuously, and wholly prevented from performing any work for compensation or profit, except the record in the former suit, but to the contrary that the proof does show that he became justice of the peace for one of the precincts of Wichita county, on January 1, 1927, and as such earned $667.25 in fees in civil cases during that year; that therefore he was engaged in a gainful occupation, which, under the terms of the policy, precluded recovery for that installment.

### Opinion.

Plaintiff pleaded: "Plaintiff would further show to the court that said policy of insurance provides that same should be tendered to the defendant annually for the purpose of endorsement on the same, of the payments as they accrue and that plaintiff has so tendered said policy and here and now tenders said policy and demands payment of said sums due him, together with interest, attorney fee and penalty as provided by law and such contract, and that such payment be endorsed on said contract."

Plaintiff also pleaded: "Under provisions of said policy, and under the judgment entered by the court in said cause (meaning that of July 9, 1926), the defendant became obligated and bound to pay plaintiff the sum of $2,000.00 per annum, accruing on the 23rd day of March in each year from and after the 23rd day of March, 1926. That the payment due March 23rd, 1926, recovered in said judgment has been duly paid to the plaintiff, but the payment accruing on the 23rd day of March, 1927, has not been paid and is long past due and though often demanded, defendant has not paid same or any part thereof to plaintiff's damage in the sum of $3,740.00, together with the interest as follows: $2,000.00 principal, 12% statutory penalty of and by reason of the failure due demand and $1,500.00 as attorney fee which plaintiff would show to the court is a reasonable and necessary expense incurred by him."

The only evidence on the subject was that of R. S. Ragsdale, as follows:

"I, as representing the plaintiff, H. I. Johnson, in the case pending, some time subsequent to March 23, 1927, and more than thirty days before the filing of this suit, wrote a letter to the Great Southern Life Insurance Company about the $2,000.00 sued for in this suit. In response to the said letter I received a letter from the Great Southern Life Insurance Company in which they refused to pay. I want to account for that letter and reason why I am not offering it. I have made diligent search for the letter received from the Great Southern Life Insurance Company in response to my letter and I cannot find it. I have not been able to find it. The letter was to the effect that they were in possession of information that the plaintiff was not then totally and permanently disabled and that he was in fact following a gainful occupation and they refused to make the payment."

Cross-examination:

"I cannot give you the date of that letter. My recollection is that it was shortly after the 23rd day of March, 1927, within a week after I wrote. I also got a letter from the law firm of Vinson, Elkins, Sweeton & Weems with reference to the same matter. My recollection is that that letter was quite awhile after I received the letter from the company. I cannot find the letter from the law firm. I recall it very well though. The sum and substance was that the company declined to pay because its information was that the man was not totally and permanently dis-

abled and he was then, and had been during the year 1927, following a gainful occupation."

We think a sufficient tender of the policy for indorsement was made in plaintiff's pleading and a sufficient "demand" for payment as contemplated by the policy was proved.

Mr. Ragsdale's testimony shows that, as plaintiff's representative, he wrote the company "about the $2000.00 sued for in this suit," and in answer thereto the company wrote him that it refused to pay, as did also the company's attorneys.

What did the company refuse to pay? The only matter then under consideration was the payment of the installment in question, and the refusal to pay was in reply to a request or demand for such payment.

The company is not in position to assert that no demand for payment was made, because it treated the letter from plaintiff's attorney as a demand for payment.

The statute does not in terms provide that the demand shall state the exact amount, or any particular amount, claimed to be due under the policy (National Life Ins. Co. v. Mouton, 113 Tex. 228, 252 S. W. 1040). In Penn Mutual Life Ins. Co. v. Maner, 101 Tex. 553, 109 S. W. 1084, a letter from the claimant's attorneys to the insuring company, notifying it that the claim had been placed in their hands, and calling the company's attention to the liability for penalty and attorney's fees, with request for payment "in advance of litigation," was held to be a sufficient demand within the meaning of the statute to render the insurer liable for the penalty and attorney's fee on failure to pay the amount of the policy within the specified time.

■ The former judgment of July 9, 1926, ordinarily would be res judicata of the proposition that defendant in error was totally and permanently disabled were it not for this saving clause: "The court further finds that the plaintiff is not entitled to recover judgment maturing installments of $2,000.00 a year maturing in the future. This judgment in respect to future installments is without prejudice to the rights of either of the parties hereto in any litigation that may be had concerning said future installments."

In the former suit plaintiff sought to have all the installments matured and to recover a judgment for the full sum of $20,000. The court allowed a recovery for only the one installment of $2,000, and denied any recovery for the others. If the former judgment is res judicata, then it might be plausibly argued that there can be no recovery in this suit, because, the court having held against him as to all except $2,000, plaintiff is barred and cannot now relitigate the question as to the remaining installments. It is by virtue of the saving clause in that judgment and on the theory that said judgment therefore is not res judicata as to future installments that plaintiff can maintain this suit.

The reservation or saving clause is very broad, and reserves all their rights to all the parties, which necessarily means that, if Mr. Johnson should, during any installment period, so recover in physical condition as not to be totally disabled within the meaning of the policy, the company would not be obligated to pay him during the period he is so recovered. It is conceivable that, although when the case was tried the jury correctly found him totally disabled, at that time, but afterwards he might recover either wholly or to such an extent as not to be totally disabled, such a future situation must have been contemplated by the trial court when that particular reservation was included in the judgment.

Defendant in error refers us to S. W. Surety Co. v. Curtis (Tex. Civ. App.) 200 S. W. 1162; Southern Surety Co. v. Lucero (Tex. Civ. App.) 218 S. W. 68, 69; and N. Y. Life Ins. Co. v. English, 96 Tex. 268, 72 S. W. 58, as supporting the proposition that the former judgment is res judicata of the company's liability on the question of total disability because that was actually and directly in issue. In said cases it was sought to recover, not only the matured installments, but also those becoming due in the future. It was held in all of them that no judgment should be rendered for the unmatured installments.

But in the Curtis and Lucero Cases the reserving clauses were "without prejudice to the right of the beneficiary to sue for and recover such installments as they mature," and ."without prejudice to the right of appellee to sue for and recover such installments of weekly payments and interest as they mature"—clearly different from, and more restrictive than, the reservation here, which clearly comprehends all future installments and all rights of either party in any litigation concerning them.

In the English Case there was no reservation in the judgment of future rights. The judgment below was for $3,000, the full amount of the policy, including installments not yet matured; the Court of Civil Appeals (70 S. W. 440) reversed said judgment, and rendered one in favor of Mrs. English against the insurance company for $3,000, with execution for the first installment of $300 and 6 per cent. interest, 12 per cent. damages and 10 per cent. attorney's fee upon that amount, and directed that, at the end of each year thereafter, execution should issue in favor of the plaintiff against the company for the annual installment of $300, with interest from that date. The Supreme Court held that a contract for the payment of money will not support an action until it becomes due and payable according to its terms, and therefore it was error to render judgment for the

full amount or to give judgment authorizing execution for each future installment as it should fall due. The Supreme Court further held that the liability of the insurance company, *so far as put in issue by the pleading*, would have been determined as to the whole policy if the suit had been instituted for one installment only.

So, here, the company's liability would have been determined as to the whole policy were it not for the reservation to the parties of all their rights in any litigation concerning future installments. Hermann v. Allen, 103 Tex. 383, 128 S. W. 115; Winter Garden L. Co. v. Zavalla D. C. District (Tex. Civ. App.) 5 S.W.(2d) 606, 609.

The former judgment therefore not being res judicata as to any subsequent installment because it is expressly excluded therefrom, it becomes a question of fact whether in a suit for the recovery of such subsequent installment the insured was at that time "permanently, continuously and wholly prevented from performing any work for compensation or profit or from following any gainful occupation."

As said in Hefner v. Fidelity & Casualty Co., 110 Tex. 606, 160 S. W. 330, 334, 222 S. W. 966, such a clause in the policy should be reasonably construed; a literal construction "would require a complete loss of all physical power and mental capacity—in fact, it would scarcely happen that one could live and bring himself within the literal language of the contract." While the policy in Commonwealth Bonding & Casualty Co. v. Bryant (Tex. Sup.) 240 S. W. 893, limited the character of disability to the performance of any and every kind of duty pertaining *to his occupation*, and here the policy is more comprehensive in that, "if any work may be performed for compensation or profit, or any gainful occupation may be followed," recovery is precluded, the rule announced by Judge Greenwood in that case applies here, viz.: "The court will not give such a literal interpretation to the langauge of this contract * * * as to practically relieve the insurer of all obligations thereunder. Such would be the effect of a decision discharging plaintiff in error from all liability if defendant in error, after his injury, could do *anything required of him* as a railroad conductor."

A policy requiring payment for total disability ordinarily is not one of indemnity against loss of income but against loss of capacity to work. 6 Cooley's Briefs on Insurance (2d Ed.) 5536. "Total disability" is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case and on the nature of the occupa-

tion or employment and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists if he is unable to do any substantial portion of the work connected therewith. Id. 5539.

The term "gainful occupation" is likewise a relative one; the insured's occupation and earning capacity at the time the policy issued was in contemplation of the parties— what would be a "gainful occupation" for one may not be such for another. A prosperous merchant with a constantly expanding business, earning large and continually increasing profits, who because of injuries received is totally disabled from continuing that business, and it becomes bankrupt as a result, certainly cannot be said to pursue a "gainful occupation," compared to the other, if he is fortunate enough to earn something though out of all proportion to what he had previously earned. Thus in Supreme Council v. Grove, 176 Ind. 356, 96 N. E. 159, 36 L. R. A. (N. S.) 913, the Indiana Supreme Court held that an insured whose income was a pension, who had no property, and who was disabled from labor at his trade, was entitled to recover because of total disability from attending to his business or gaining a livelihood.

The fact that defendant in error was elected justice of the peace of his precinct and is acting as such is not of itself conclusive that he is following such a "gainful occupation" as relieves the company, nor that he is not permanently and totally disabled within the terms of the policy. These are questions for the jury or trial court.

As stated above, the first judgment, because of its express terms, being without prejudice to the rights of either party in any litigation, that may be had concerning future installments, is not conclusive evidence of Johnson's right to recover them, and he has the burden of proof to show the facts entitling him to a recovery, independently of such judgment; he failed to do this, and we therefore recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and the cause remanded to the district court for another trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.