STATE LIFE INS. CO. v. WILSON.

No. 3901.

Court of Civil Appeals of Texas. Amarillo.

Oct. 26, 1932.

Rehearing Denied Nov. 23, 1932.

JACKSON, J.

The appellee instituted this suit in the county court of Lubbock county on an insurance policy issued to him by appellant, to recover certain monthly installments of $25 each, together with interest and attorney's fees alleged to be due him under the provisions of the policy on account of his total and permanent disability.

The appellee pleaded his total and permanent disability caused by disease, that appellant had paid him the monthly installments from January 1st to October 1, 1931, its refusal to continue the payments, demand, proof of disability, and the provisions of the policy on which he relied for recovery.

The appellant answered by general demurrer and general denial.

In response to special issues submitted by the court, the jury found that appellee, since October 1, 1931, on account of the alleged disease, was wholly, permanently, and continuously disabled to such an extent that he could not perform any work for compensation or profit or follow any gainful occupation; that such disability would continue until January 1, 1933; and that a reasonable attorney's fee was the sum of $100.

On these findings judgment was rendered that the appellee have and recover from the appellant $296 with interest thereon from

April 23, 1932, and all costs, from which judgment this appeal is prosecuted.

By several assignments of error the appellant challenges the sufficiency of the testimony to warrant the finding of the jury that appellee was wholly, permanently, and continuously disabled and could not follow any gainful occupation since October 1, 1931.

The provisions of the policy material to a disposition of the appeal provide:

"Total and permanent disability. If the insured, after paying at least one full annual premium and before default in the payment of any subsequent premium and before attaining the age of sixty years, shall become wholly and permanently disabled by bodily injury or by disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation, the Company, upon receipt at its Home Office of due proof of such disability of the insured as may be required by the Company, will grant the following benefits:

"First—Will waive payment of premiums thereafter becoming due.

"Second—In addition will pay the insured a monthly income equal to one per cent of the original amount of insurance (exclusive of any accidental death benefit). The first monthly payment will be made upon satisfactory proof of disability as above provided, and the subsequent monthly payments will be made on the first day of each month thereafter during such disability. * * *

"Proofs similar to those originally required of such continuous disability must be furnished at any time, if requested by the Company, but not oftener than once a year, and if the insured should fail to furnish such proofs, or should so far recover as to be able to engage in any gainful occupation, the obligation on the part of the Company to waive payment of premiums and pay to the insured a monthly income shall cease, and the insured shall resume payment of premiums in accordance with this contract beginning with the first premium becoming due after failure to furnish such proofs or after the date of such recovery."

The testimony discloses that for some years prior to 1929 the appellee was engaged in the abstract business in the city of Lubbock; that he made abstracts, prepared deeds, contracts, and other instruments. In 1929 he became afflicted with bronchitis, sold his business, procured treatment and advice from various physicians, and sought relief in different states, climates, and altitudes; that the disease caused his bronchial tubes and the air passages of his lungs to fill with mucus which interfered with his breathing and caused severe coughing spells every night and he had to sit up in bed and take some medicine for temporary relief; that he had become nervous, was unable to sleep because of the nightly attacks of asthma, had lost twenty pounds in weight, his stomach, digestion, and heart had become involved and he had lost much of his strength; that appellant had paid appellee the installments of $25 per month from January 1st to October 1, 1931, and thereafter refused to make any further payments.

The appellee testified that he had tried many different remedies, none of which afforded him anything but temporary relief; that after lying down at night from two to four hours he choked up and had to get up and stir around; that under the advice of physicians he took all the exercise he could in the air and sunshine, sometimes played golf, carried his own bag, but took his time and there was a bench at each tee on which he could rest; that he frequently, when the weather would permit, walked from his home to town, a distance of approximately 1¼ miles, but often had to sit down and rest on his way; that he supposed he went to town something like 80 per cent. of the time and when there stayed at different places, but spent most of his time when in town at the office where his old abstract business was carried on by his sister and brother-in-law; that he was interested in the business to the extent that it had not been paid for, occasionally solicited business for them, and sometimes, when at the office, advised his sister what should be put in the abstract; that he collected or received the rent from the tenants in his building; that he could not go to the clerk's office or around over town, operate a typewriting machine, or do any of the clerical or physical work required to run an abstract business; that he could do neither physical nor mental work.

Dr. Stewart, who qualified as a practicing physician and surgeon, and who is one of appellant's medical examiners, testified that at the request of appellant he had examined appellee in October, 1931, and had examined him twice since that date, the last time about two days before the trial; that appellee was suffering from a severe case of chronic bronchitis, and, from the conditions revealed by the examination, in the opinion of the witness, appellee was not able to operate a typewriting machine, examine records, deliver abstracts, or do any steady work of any kind or follow any gainful occupation; that such work would aggravate his condition; and that in his judgment the appellee was totally disabled.

The appellant's contention that the circumstances developed from a cross-examination of these witnesses disclosed that appellee was only partially disabled and not totally disabled, is not tenable, and the court was not authorized to direct a verdict in its favor.

Judge Greenwood, in construing the meaning of "wholly disable and prevent the insured

235

from performing any and every kind of duty pertaining to his occupation," says:

"The court will not give such a literal interpretation to the language of this contract, wherein the larger weekly indemnity is promised, as to practically relieve the insurer of all obligation thereunder. Such would be the effect of a decision discharging plaintiff in error from all liability if defendant in error, after his injury, could do anything required of him as a railroad conductor. Hefner v. Fidelity & Casualty Co., 110 Tex. 605–607 [160 S. W. 330], 222 S. W. 966. The language of the policy is fairly and justly susceptible of the interpretation, which, we think, should be given to it, that the larger indemnity was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation." Commonwealth Bonding & Casualty Ins. Co. v. Bryant (Tex. Sup.) 240 S. W. 893, and authorities there cited.

"A policy requiring payment for total disability * * * is not one of indemnity against loss of income but against loss of capacity to work." Great Southern Life Insurance Company v. Johnson (Tex. Com. App.) 25 S.W.(2d) 1093, 1097.

■ The appellant challenges as erroneous the definition given by the trial court of the word "wholly," because on the weight of the evidence, it does not permit the jury to take into consideration appellee's mental ability to transact business and does not take into consideration work for profit or the following of other gainful occupations.

The record discloses that, after the jury had retired, they returned and requested the court to define the word "wholly" and that the court gave them the following definition: "In response to your written request you are charged that the word 'wholly' as used in the policy of insurance is equivalent to total disability. It does not mean absolute physical inability to transact any business at all, but it means the inability to do the substantial acts necessary to be done in the transaction of one's business."

In issue No. 1 the court had submitted to the jury whether appellee, on account of the disease, was wholly, permanently, and continuously disabled to such an extent that he could not perform any work for compensation or profit or follow any gainful occupation.

The policy provides, in substance, that, if insured becomes wholly and permanently disabled by disease so that he is and will be permanently, continuously, and wholly prevented from performing any work for compensation or profit or following any gainful occupa-

tion, the company will pay him a monthly income equal to 1 per cent. of the original amount of insurance. The policy was issued for $2,500 and 1 per cent. thereof would be $25. In our opinion there is no difference between "wholly disabled" and "total disability."

" 'Total disability' is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case and on the nature of the occupation or employment and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists if he is unable to do any substantial portion of the work connected therewith. Id. [6 Cooley's Briefs on Insurance (2d Ed.)] 5539.

"The term 'gainful occupation' is likewise a relative one; the insured's occupation and earning capacity at the time the policy issued was in contemplation of the parties—what would be a 'gainful occupation' for one may not be such for another." Great Southern Life Ins. Co. v. Johnson, supra.

See, also, Winters Mutual Aid Association, Circle No. 2, v. Reddin (Tex. Com. App.) 49 S.W.(2d) 1095.

The definition of the word "wholly" complained of is in substantial compliance with the meaning given thereto in many of our court decisions. In addition to the authorities supra, see Fidelity & Casualty Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806, writ denied; North American Accident Ins. Co. v. Miller (Tex. Civ. App.) 193 S. W. 750, writ denied; United States Fidelity & Guaranty Co. v. Hardeman (Tex. Civ. App.) 22 S.W.(2d) 1112, and authorities there cited.

The appellant contends by proper assignment that issue No. 1 submitted by the court is multifarious because asking in one issue if appellee is wholly, permanently, and continuously disabled.

■ In view of the language of the insurance contract providing that, in order for appellee to recover, he must show that he had become wholly and permanently disabled by disease so as to be permanently, continuously, and wholly prevented from performing any work, etc., the court did not, in our opinion, commit reversible error in submitting the issue as he did. Wortham et al. v. Bull (Tex. Civ. App.) 19 S.W.(2d) 211, and authorities cited; City of Abilene v. Moore (Tex. Civ. App.) 12 S.W. (2d) 604.

Appellant's assignments attacking the sufficiency of appellee's pleading and the sufficiency of the testimony on the question of attorney's fees and penalty are overruled.

The judgment is affirmed.