## BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN v. FORRESTER.

### No. 8293.

Court of Civil Appeals of Texas. Austin.

Jan. 27, 1937.

Rehearing Denied Feb. 10, 1937.

Robt. T. Neill and James P. Farrell, both of San Angelo, for appellant.

Travis E. Baker, Upton & Upton, and H. O. Williams, all of San Angelo, for appellee.

BAUGH, Justice.

Appellant is a fraternal organization, maintaining as one of its purposes an insurance protection for the benefit of its disabled members. Forrester, a locomotive fireman, became a member in December, 1919, and has continuously since that time been a member in good standing. Its funds are provided through monthly dues of its members. Prior to 1931, when said organization made certain changes in its insurance laws, benefits were paid to disabled members through its relief department and its pension department. In 1931 said organization 'discontinued its pension department and established a disability benefit fund, which change was agreed to by Forrester, who was thereafter paid $50 per month from this fund because of total disability resulting from pulmonary tuberculosis, through March, 1933, when, after a re-examination, such payments were discontinued on the ground that he was no longer totally disabled within the meaning of the constitution of the organization. After appellee had prosecuted his appeal in the manner provided in the constitution of the brotherhood, he filed this suit to recover the $50 per month from the date his payments were discontinued. Trial was to a jury on special issues, which were answered in favor of appellee, and judgment rendered for the aggregate of the monthly benefits from the date same were discontinued up to the time of the trial, with interest; from which judgment the brotherhood has prosecuted this appeal.

The jury found in answer to the special issues submitted that appellee was, on April 1, 1933 (the date his payments of benefits were discontinued), (1) "totally disabled from engaging in any occupation, profession or business or from performing or directing any work for remuneration or profit by reason of tuberculosis;" (2) that such total disability was permanent; and (3) that such total and permanent disability had existed at all times from April 1, 1933, to December 1, 1934.

The first contention made by appellant is that it was entitled to an instructed verdict on the ground not only that the evidence failed to show that appellee was totally disabled, as that term was defined in the constitution of appellant, but that the evidence showed the contrary in that he was able to and did carry on an occupation prior to the time his disability rating was canceled by appellant, and that he was able to and did direct work for remuneration and profit in his tubercular condition. Since this question was submitted to the jury in the language of appellant's constitution under which his rights must be determined, it in effect presents the question of whether there was any competent evidence to sustain the jury's answer to the first special issue.

The record shows that appellee was a fireman from 1919 to July 1, 1924, when he was retired because of tuberculosis. Appellant's physicians then rated him as totally disabled. He continued to be so rated and was paid pension and relief benefits continuously thereafter under the old constitution up until 1931 when the constitution was amended so as to provide the disability benefit fund. He was again rated as totally disabled under the new disability benefit law, and monthly benefits paid to him out of that fund up until April, 1933, when, as above stated, after further examination by or at the instance of appellant's medical department, his rating was changed, and his disability payments discontinued.

It is not controverted that appellee had tuberculosis in both lungs in 1924; that he then received two months treatment in the Santa Fe Hospital at Temple, then nine months treatment in the State Sanatorium at Carlsbad, and upon discharge therefrom moved to San Angelo where he received "gas treatments" for five and a half years until May, 1930. He tried to operate a taxicab in 1929 or 1930, but, according to his testimony, had to quit on account of his physical condition. While there was evidence of two physicians that his case had been arrested and that he could do light work, there was testimony of appellee, his wife, and two other physicians that he was wholly unable to perform any manual labor, about the only labor he was qualified to do; that he needed several hours of rest each day in addition to rest at night; that his disease was still active; that he continuously ran temperature; that he would never recover; and that the performance of any physical labor would likely put him in bed, endanger his health, and shorten his life. His education was very limited, he having reached only the fourth or fifth grade in school, and manual labor was about his only field of opportunity to earn anything. While there was evidence to the contrary, it is manifest, we think, that the foregoing summary of the testimony shows sufficient evidence to sustain the jury's finding of total and permanent disability, unless, as further contended

by appellant, the court gave, in his charge to the jury, an erroneous definition of the term "totally disabled."

On this issue the court defined the term "totally disabled" as follows:

"In connection with special issue No. 1 you are charged that the term 'totally disabled' as used in this charge, does not imply an absolute impossibility to perform any work. A person is totally disabled when his physical condition is such that he is unable to perform or direct any work without injury to his health, and when common prudence and the exercise of ordinary care would require him to desist from the performance of his duties."

This definition was objected to by appellant on the ground that it varied the definition of total disability prescribed in appellant's constitution, which became a part of appellee's contract with the brotherhood; and that the court should have given only the definition set forth in this constitution, under which appellee claimed his benefits. This provision of the constitution was:

"In this Constitution of the Brotherhood of Locomotive Firemen and Enginemen total and permanent disability shall be construed to mean such a state of bodily incapacity as shall wholly and permanently prevent a member from engaging in any occupation, profession or business, or from performing or directing any work for remuneration or profit, but shall not include claims resulting solely from old age."

 We have reached the conclusion that the trial court did not err in giving the instruction complained of. The question asked the jury was clothed in the exact language of appellant's constitution in so far as the field of appellee's possible labors was concerned. While the language of the constitution, "such a state of bodily incapacity as shall wholly and permanently prevent," etc., appellee from engaging in the occupation, etc., named was not used, the result is we think the same as if this exact language had been used. The instruction given by the court was in close conformity with the meaning of the term "total disability," used in a fraternal benefit certificate, as defined by Commissioner Critz in Kemper v. Police & Firemen's Ins. Ass'n (Tex.Com.App.) 44 S.W.(2d) 978, 981. That case follows the definition laid down, among other cases, in Hefner v. Fidelity & Casualty Co., 110 Tex. 596, 160 S.W. 330, 222 S.W. 966. Nor does such a definition of the term used in appellant's constitution impose any greater liability on the appellant than its contract provides. An insurer of this character has the undoubted right, as stated in the Kemper Case, to place such reasonable restrictions and conditions upon its liabilities as it sees fit; and when same are written into the contract in unambiguous language, it is the duty of the courts to enforce such contracts as written. Parrott v. Brotherhood of Railroad Trainmen (Tex.Civ.App.) 85 S.W.(2d) 306; Williams v. Brotherhood of Locomotive Firemen (Tex.Com.App.) 298 S.W. 535. But where, as here, such society attempts to define the limits of its liability, and in doing so uses terms which in their nature are necessarily relative and their meaning cannot be prescribed with factual exactitude; such terms so used in defining the risk must be given the meaning and interpretation placed upon them in the adjudicated cases. In the instant case we see no distinction between a "total disability" to do the things enumerated in the constitution of appellant, and "bodily incapacity" to do these same things. The use of the term "total disability" in appellant's constitution prescribing who shall be entitled to disability benefits carries with it the meaning ascribed to it by the courts; and the addition made of "such a state of bodily incapacity," etc., neither adds to nor detracts from that meaning. Similar provisions, carrying the same restrictions as to liability, have been frequently interpreted by the courts and given a construction in harmony with that given by the trial court in the instant case. See Great Southern Life Ins. Co. v. Johnson (Tex.Com.App.) 25 S.W.(2d) 1093, 1097; Winters Mutual Aid Ass'n v. Reddin (Tex. Com.App.) 49 S.W.(2d) 1095, 1097; Amarillo Mut. Benev. Ass'n v. Franklin (Tex. Com.App.) 50 S.W.(2d) 264, 268; State Life Ins. Co. v. Wilson (Tex.Civ.App.) 54 S. W. (2d) 233; Hassell v. Brotherhood of Locomotive Firemen, 126 Tex. 256, 87 S.W. (2d) 468, 470.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.