**JVA OPERATING COMPANY et al., Appellants,**

v.

**KAISER–FRANCIS OIL COMPANY et al., Appellees.**

**No. 11–99–00113–CV.**

Court of Appeals of Texas, Eastland.

Feb. 10, 2000.

Rehearing Overruled March 9, 2000.

---

James W. Essman, Boldrick, Clifton, Holland & Essman, Midland, for appellants.

Rod E. Wetsel, Steakley & Wetsel, Sweetwater, for appellees.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

TERRY McCALL, Justice.

The controversy in this case involves the reservation of a production payment in a conveyance of leasehold interests. The trial court held that the production payment was to be paid from hydrocarbons produced from all formations conveyed with the leasehold interests. Because we find that the production payment is limited to hydrocarbons produced from the Canyon Sands formation, we reverse.

On March 20, 1969, appellees unitized their leasehold interests in 10 tracts of land with 4 other tracts of land for the production of oil and gas.[1] The Unit Agreement limited the unitization to the Canyon Sands formation underlying the 14 tracts of land.[2] On May 1, 1969, appellees executed a Conveyance and Assignment With Reservation of Production Payment (the Conveyance), conveying their leasehold interests in the 10 tracts of land to Sun Oil Company but reserving a $3,900,000 production payment as part of the consideration for the assignment. The Conveyance is the subject of this appeal. JVA Operating Company, Inc., and the other appellants are the owners and operators of the leasehold interests conveyed to Sun Oil Company by the Conveyance.[3]

1. Appellees are the Kaiser–Francis Oil Company, successor by merger to MGF Oil Corporation; Peter Henderson Oil Company; W. Peter Henderson; Elizabeth R. Henderson; Michael Henderson; George F. Baker, III and C.A. Dunn, coexecutors under the will of George F. Baker, Jr., Deceased; Lavinia Baker; Kane K. Baker; Anthony K. Baker; George F. Baker, III; and Pauline B. Boardman. Reference to appellees includes their predecessors in interest.

2. The unitized formation described in the Unit Agreement is the Bloodworth, Northeast 5650', 5750' Canyon and 5800' Canyon Fields, referred to by both parties as the Canyon Sands formation.

3. For convenience, appellants shall be referred to as JVA. In addition to JVA Operating Company, Inc., appellants are: J.V. Atkinson; Alvin L. Barnes; L.C. Bowles; Anderson Carter, Individually and as Personal Representative of the Estate of Geraldine Carter, Deceased; Carter Operating Co.; Powhatan Carter, Jr. and Beverly T. Carter Revocable Trust under Trust Agreement dated September 25, 1981; Jack Cobb; Paul Cobb; David

**506**

For years, the only oil and gas production was from the Canyon Sands formation, and there was no disagreement over the production payment being reduced by proceeds from that oil and gas production. In 1992, however, JVA as the lease operator drilled a well and obtained production from the Ellenberger formation. The Ellenberger formation is below the depths of the Canyon Sands formation defined in the Unit Agreement. JVA filed suit for a declaratory judgment that the production payment is limited to being paid out of production from the Canyon Sands formation.

■■■■ Appellees and JVA both filed motions for summary judgment, asserting that the Conveyance was unambiguous and that its construction was a matter of law. If the language is unambiguous, the trial court's primary duty is to ascertain the intent of the parties from the language of the deed by using the "four corners" rule. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). Courts use canons of construction to help ascertain the parties' intent. *Southland Royalty Company v. Pan American Petroleum Corporation*, 378 S.W.2d 50, 59 (Tex.1964). The "four corners" canon of construction means that the court must look at the entire instrument to ascertain the intent of the parties. *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795, 797 (Tex.1995); *Luckel v. White*, supra at 461. The trial court granted appellees' motion, finding that the production payment included oil and gas produced from the Ellenberger formation, and denied JVA's motion. Because the construction of a document is a matter of law, we review the matter on a de novo basis. See *Matter of Humphreys*, 880 S.W.2d 402, 404

(Tex.), *cert. den'd*, 513 U.S. 964, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994).

We begin with the granting clause of the Conveyance which conveyed to Sun Oil Company:

A. The leasehold estates, described in Exhibit "A" which is attached hereto and made a part hereof (hereinafter called *"Subject Interests"*). (Emphasis added)

In Exhibit A, it is clear that the Subject Interests appellees conveyed to Sun Oil Company were their interests in oil, gas, and mineral leases relating to the 10 tracts of land. Exhibit A describes each of the 10 tracts of land, the interest in each tract being conveyed, the depths covered by the assignment, and each appellee's ownership interest being conveyed. Exhibit A states that the interests are conveyed subject to the Unit Agreement.

The reservation clause immediately follows the granting clause:

EXPRESSLY EXCEPTING AND EXCLUDING, HOWEVER, from this assignment and retaining and reserving unto Assignors [appellees], in proportion to their respective ownership, for themselves and for their several and respective heirs, personal representatives, successors and assigns, *as a production payment, the hereinafter shown percentages of Net Barrels of Oil and Gas produced, saved, sold and allocated to the Subject Interests, hereinafter referred to as "Reserved Percentage of the Hydrocarbons,"* from and after the Effective Date and throughout the period hereinafter specified. (Emphasis added)

The question is what is being reserved "as a production payment." As can be seen from the structure of the clause, the an-

C. Cotner; A.G. Cummings; Discovery Exploration; Bob W. Dutton, Trustee; T.B. Field, Jr.; Robert S. Baker, Trustee of the T.B. Field Trust; Michael T. Garrett; Dianne Hanks Graham; Freda Nutt Hanks; Dr. K.E. Hedrick; Henderson & Erickson Ltd.; H. Hampton Hodges; Jack Huff; Theodore N. Isaac, Trustee of the Theodore N. Isaac Revocable Trust under Trust Agreement Dated September 2, 1975, as amended; Juanice Jameson; J.B. Jarratt; Jerry M. Jordan; Greg Keys d/b/a Keys Petroleum; J.T. King; Henry Maguire, M.D., Trustee; Roger Marcelli; Ken E. Moore; Lee Pelligreen; Mrs. C.E. Pendergraft; Jack Real; E.J. Serpas, Jr., Trustee of the Serpas Jr. Family Living Trust under Trust Agreement dated October 8, 1991; Vivian Stone; and W.H. Wittenburg.

swer is "the hereinafter shown percentages of Net Barrels of Oil and Gas produced, saved, sold and allocated to the Subject Interests."[4] The production payment is also "referred to as 'Reserved Percentage of the Hydrocarbons.'"

Appellees emphasize the reference to "Subject Interests" and contend that reference means that the production payment includes any production from the Subject Interests. This emphasis ignores the phrase "shown percentages of Net Barrels of Oil and Gas." To adopt appellees' position, we would have to ignore the fact that "Net Barrels of Oil" is a defined term in the Conveyance. "Net Cubic Feet of Gas" is a similarly defined term, and gas production that is to be credited against the production payment is defined in terms related to the "Net Barrels of Oil" produced.

The Conveyance next describes the "Primary Sum of said Production Payment" as being $3,900,000 and provides for amounts to be added as part of the production payment that equal 8 ¼ percent per annum on the diminishing balance of the Primary Sum. This section of the Conveyance again uses the terms "Reserved Percentage of Hydrocarbons" and "Subject Interests":

> The Reserved Percentage of Hydrocarbons saved and sold from the Subject Interests herein assigned or allocated thereto are to be delivered into the pipe line to which the wells on said land may be connected, if, as and when produced to the credit of Assignors, free and clear of all costs of development and operation and free and clear of such taxes as hereinabove provided.

In the reservation clause, the parties made it clear that the term "Reserved Percentage of the Hydrocarbons" is to be used interchangeably with the term "production payment" and that the production payment consists of "the hereinafter shown percentages of Net Barrels of Oil

and Gas produced, saved, sold and allocated to the Subject Interests." On Page 5 of the Conveyance, the term "Reserved Percentage of the Hydrocarbons" is defined in detail. The definition includes the terms "Net Barrels of Oil" and "Net Cubic Feet of Gas" which are given specific definitions, and the phrase "the hereinafter shown percentages of Net Barrels of Oil and Gas" in the reservation clause is explained in the definition of "Reserved Percentage of the Hydrocarbons" by the "shown percentages" being set out:

> The *Reserved Percentage of the Hydrocarbons* in, under, that may be produced, saved, sold or allocated to the Subject Property *shall be as follows:*
>
> (i) During any month of the period commencing with the Effective Date and continuing through December 31, 1971, the Production Payment shall be credited with 50% of the first 15,000 *Net Barrels of Oil,* with 100% of the next 24,000 *Net Barrels of Oil,* and 20% of any *Net Barrels of Oil* in excess of 39,000 *Net Barrels of Oil* so produced, saved and allocated to the Subject Property.
>
> (ii) For the following calendar years, the Production Payment shall be credited with the percentages of *Net Barrels of Oil* produced, saved and allocated to the Subject Property during any month of such years as follows:

| Year | Percentage to Production Payment |
|---|---|
| 1972 | 50% |
| 1973 | 40% |
| 1974 | 20% |
| 1975 | 20% |
| 1976 and subsequent years | 10% |

> (iii) During each month of each of the respective periods set forth in sub-paragraphs (i) and (ii) above, the Production Payment shall also be credited with a proportional part of the *Net Cubic Feet of Gas* produced, saved, sold and allocated to the Sub-

---

4. The noun phrase "a production payment" stands in apposition to the phrase "the hereinafter shown percentages of Net Barrels of Oil and Gas produced" and to the phrase "hereinafter referred to as 'Reserved Percentage of the Hydrocarbons.'"

ject Property; such proportional part being in the proportion that the *Net Barrels of Oil* credited to the Production Payment during any month of any such period bears to the total quantity of *Net Barrels of Oil* produced, saved, sold and allocated to the Subject Property, during such month.

(iv) The term *"Net Barrels of Oil"* as used herein, shall mean the quantity of oil produced, saved and allocated *as provided in the Unit Agreement* (as hereinafter described) to Assignors' respective Leasehold Income Interests as set out in Exhibit "A" hereof. The term *"Net Cubic Feet of Gas,"* as used herein, shall mean the quantity of gas produced, saved, sold and allocated *as provided in the Unit Agreement* to Assignors' respective Leasehold Income Interests as set out in said Exhibit "A," including, but not limited to, all quantities of liquid hydrocarbons extracted, saved and sold from such gas and allocable to the Subject Property. (Emphasis added)

The term "Subject Property" is not defined in the Conveyance. Appellees argue that the term "Subject Property" is the same as "Subject Interests." Even if they are correct, our conclusion remains unchanged. The reservation clause defines the production payment as "the hereinafter shown percentages of Net Barrels of Oil and Gas produced." The "shown percentages" are found in Subparagraphs (i) and (ii) of the definition of "Reserved Percentage of the Hydrocarbons." Subparagraph (iii) states how much gas production shall be credited to the production payment each month. Subparagraph (iv) contains mandatory definitions for "Net Barrels of Oil" and "Net Cubic Feet of Gas." Both are defined as the oil or gas "produced, saved and allocated as provided in the Unit Agreement." Appellees note that Exhibit A to the Conveyance makes it possible to compute the interest owned by the appellees in the production payment whether the production is from the unit-ized interval or from other depths. We agree that Exhibit A sets forth the various interests owned by appellees. Thus, there was no reason for the drafter of the Conveyance to refer to oil or gas "produced, saved and allocated as provided in the Unit Agreement" in Subparagraph (iv) unless the drafter meant to limit production to the unitized Canyon Sands in the Unit Agreement.

■ Because Subparagraph (iv) mandates that the terms "Net Barrels of Oil" and "Net Cubic Feet of Gas" shall mean the quantity of oil and gas "produced, saved and allocated as provided in the Unit Agreement," we conclude that the production payment is limited to oil and gas produced as provided in the Unit Agreement.

JVA also complains that the award of attorney's fees to appellees was improper. The trial court awarded attorney's fees to appellees under TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997). Section 37.009 provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Because we are reversing the trial court's judgment interpreting the Conveyance, we hold that it would not be "equitable and just" to affirm the award of attorney's fees to appellees. *Fajkus v. First National Bank of Giddings*, 735 S.W.2d 882, 887 (Tex.App.—Austin 1987, writ den'd).

We reverse the trial court and render judgment for JVA Operating Company et al on the merits that the production payment is to be paid from hydrocarbons produced from the Canyon Sands formation. We reverse and remand for the trial court to determine whether JVA Operating Company et al should recover attorney's fees.