**Dr. James KNOTT, M.D., Appellant,**

v.

**THE PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY and Debra Lucille Townley, as Independent Executor of the Estate of Ellis Garland Gatlin, Deceased, Appellees.**

No. 11–00–00243–CV.

Court of Appeals of Texas, Eastland.

March 21, 2002.

Rehearing Overruled April 18, 2002.

---

Ben C. Martin, T. King Fifer, Law Offices of Ben C. Martin, Dallas, for Appellant.

Andrew C. Whitaker, Mark T. Davenport, Figari, Davenport & Graves, Dallas, Thomas L. Fiedler, Mark Alexander, Patrick C. Frank, Fiedler, Akin, Frank & Carlton, P.C., Dallas, for Appellees.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

W.G. ARNOT, III, Chief Justice.

### Opinion

This appeal concerns a claim for benefits under two disability insurance policies issued by The Provident Life and Accident Insurance Company (Provident). Dr. James Knott, M.D., an obstetrician/gynecologist, purchased the disability insurance

policies in the 1970s from his insurance agent, Ellis Garland Gatlin, deceased. Dr. Knott received total disability benefits under the policies for 24 months from 1996 until 1998. He filed suit against Provident and the independent executor of Gatlin's estate after Provident stopped paying him benefits in 1998. The trial court granted summary judgment in favor of Provident and Gatlin's independent executor on all claims asserted by Dr. Knott. We affirm in part and reverse and remand in part.

Dr. Knott sustained a fracture to his spine as a result of a plane crash which occurred in June 1985. He was unable to work for approximately two months after the injury. Upon returning to his practice on a full-time basis in August 1985, there were various medical procedures which he could no longer perform as a result of his injury. Dr. Knott testified that he was never able to perform these procedures after the accident. He initially applied for total disability benefits under the policies in 1985. Provident denied this claim on the basis that each of the policies had a 90 day elimination period which Provident asserted that Dr. Knott had not met by his return to work in less than 90 days. Dr. Knott did not contest Provident's denial of total disability benefits at that time. Instead, he accepted Provident's offer to pay him residual disability benefits for partial disability. In order to receive residual disability benefits, Dr. Knott was required to show that he had sustained a loss of income as a result of his disability. Dr. Knott received residual disability benefits periodically from 1986 until 1989. Dr. Knott stopped receiving residual disability benefits in 1989 because his earnings met

or exceeded the amount of his earnings prior to the accident.

Dr. Knott neither applied for nor received any type of disability benefits from Provident from 1989 through 1995. He remained covered under the policies during this period although he did not pay any premiums.[1] Dr. Knott's 65th birthday occurred in August 1995. He filed a second claim for total disability benefits under the policies in January 1996. This second claim coincided with Dr. Knott reducing his workload to a part-time basis. Provident began paying Dr. Knott total disability benefits based on the second claim in April 1996 after the 90–day elimination period had been satisfied. Provident terminated his benefits in March 1998 after 24 months of benefits had been paid. Provident based this action on a provision of the policies which provided for a maximum of 24 months of benefits for disabilities commencing after the insured's 65th birthday. Dr. Knott filed suit asserting that Provident's termination of benefits constituted a breach of the insurance contract and occurred in bad faith. He alleges that Gatlin misrepresented the terms of the policies to him at the time of purchase.

When reviewing a traditional motion for summary judgment, the following standards apply: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference

1. An agreement was reached between Dr. Knott and Provident whereby Provident agreed to permanently waive Dr. Knott's premiums for the policies after the date of the plane crash. The record does not establish the reason why Dr. Knott's premiums were waived.

must be indulged in favor of the non-movant and any doubts resolved in its favor. TEX.R.CIV.P. 166a; *Goswami v. Metropolitan Savings and Loan Association*, 751 S.W.2d 487, 491 (Tex.1988); *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 676 (Tex.1979).

■ The order of the trial court did not specify the grounds for its summary judgment; therefore, summary judgment will be affirmed on appeal if any theories advanced are meritorious. *State Farm Fire & Casualty Company v. S.S. & G.W.*, 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). Provident's motion for summary judgment alleged nine grounds while the motion for summary judgment filed by Gatlin's independent executor alleged five grounds. Dr. Knott attacks each of these grounds on appeal.

■ Dr. Knott's Issue No. 8 asserts that the trial court erred in granting summary judgment on Provident's claim that the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1002 et seq. (West 1999), (ERISA) preempts all of his state law claims.[2] Provident contends that the arrangement for Dr. Knott's disability insurance policies constituted an "employee welfare benefit plan" under ERISA. ERISA defines an "employee welfare benefit plan" in Section 1002(1) as:

[A]ny plan, fund or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

The arrangement presented in this case involves disability insurance.

■ In examining a particular arrangement to determine whether it qualifies as an employee welfare benefit plan under ERISA, a court should inquire whether a plan: (1) exists; (2) falls within the exceptions established by the Department of Labor; and (3) satisfies the primary elements of an ERISA employee welfare benefit plan. *Meredith v. Time Insurance Company*, 980 F.2d 352, 355 (5th Cir.1993). Thus, a court confronted with the question of whether a plan qualifies as an employee welfare benefit plan within the scope of ERISA must initially satisfy itself that there is in fact a plan at all. *Meredith v. Time Insurance Company, supra* at 355. To determine whether a plan, fund, or program exists, a court must determine from the surrounding circumstances whether a reasonable person could ascertain the intended: (1) benefits; (2) beneficiaries; (3) source of financing; and (4) procedures for receiving benefits.

---

**2.** Provident sought and obtained removal of this case to federal district court based upon its claim of ERISA preemption. The federal district court ruled that Dr. Knott's claims were not preempted and remanded the case back to state court. The federal district court's denial of Provident's preemption claim is not binding on this court. See *Soley*

*v. First National Bank of Commerce*, 923 F.2d 406, 410 (5th Cir.1991). An excellent discussion of the purposes and effects of ERISA applicability is set out in *Grainger v. Western Casualty Life Insurance Co.*, 930 S.W.2d 609, 614–15 (Tex.App.-Houston [1st Dist.] 1996, writ den'd).

*Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982); see also *Memorial Hospital System v. Northbrook Life Insurance Company,* 904 F.2d 236, 240 (5th Cir.1990)(adopting *Donovan* for the Fifth Circuit).

 There are two primary elements of an ERISA employee welfare benefit plan. A court must consider: (1) whether an employer established or maintained the plan and (2) whether the employer intended to provide certain benefits to its employees. *MDPhysicians & Associates, Inc. v. State Board of Insurance,* 957 F.2d 178, 183 (5th Cir.), *cert. den'd,* 506 U.S. 861, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992); *Hansen v. Continental Insurance Company,* 940 F.2d 971, 978 (5th Cir.1991). Whether a particular set of insurance arrangements constitutes an employee welfare benefit plan is a question of fact. *McNeil v. Time Insurance Company,* 205 F.3d 179, 189 (5th Cir.2000); *Zavora v. Paul Revere Life Insurance Company,* 145 F.3d 1118, 1120 (9th Cir.1998). The burden of establishing the existence of an ERISA plan is on Provident. *Zavora v. Paul Revere Life Insurance Company, supra* at 1120.

The Fifth Circuit has held that a plan in which the only participants are the owners or partners does not constitute an ERISA benefit plan. *McNeil v. Time Insurance Company, supra* at 190; *Meredith v. Time Insurance Company, supra* at 357–58; see *Parker v. Parker,* 897 S.W.2d 918, 925 (Tex.App.-Fort Worth 1995, writ den'd). The summary judgment evidence indicates that a total of five disability insurance policies were issued by Provident to Dr. Knott and two other physicians with whom he was associated. The other physicians were Dr. Knott's partners in a professional association for most of the time in which

the policies were in force. Consequently, there is summary judgment evidence that the only persons covered by the disability policies were owners of the medical practice. This evidence raises a fact question under the holdings in *McNeil* and *Meredith* that the only participants were owners or partners and, therefore, precludes the trial court's determination that an ERISA plan existed as a matter of law. Issue No. 8 is sustained. Issue No. 1, to the extent that it challenges the same ground as Issue No. 8, is also sustained. Because this portion of the summary judgment is being remanded for determination of a fact issue, we do not reach Issue No. 9 which alleges that Provident abused its discretion in handling Dr. Knott's claim. TEX.R.APP.P. 47.1.

 In Issue No. 2, Dr. Knott addresses a summary judgment ground wherein Provident alleged that the termination of Dr. Knott's benefits in 1998 did not constitute a breach of the insurance policy because he was not totally disabled when the termination occurred. In order to analyze the summary judgment evidence regarding the level of Dr. Knott's disability at the time his benefits were terminated in 1998, a construction of the policies' definition of total disability is required. Interpretation of insurance contracts is governed by the same rules as interpretation of other contracts. *Trinity Universal Insurance Company v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997). Because the construction of a document is a matter of law, we review the matter on a de novo basis. See *In the Matter of Humphreys,* 880 S.W.2d 402, 404 (Tex.), *cert. den'd,* 513 U.S. 964, 115 S.Ct. 427, 130 L.Ed.2d 340 (1994); *JVA Operating Company v. Kaiser–Francis Oil Company,* 11 S.W.3d 504, 506 (Tex.App.-Eastland 2000, pet'n den'd).

Each of the policies contained the following definition: "Total Disability means that due to Injuries or Sickness, you are unable to perform the duties of your occupation." With respect to the dispute at hand, the most important words are "the duties of your occupation." Provident contends that Dr. Knott cannot be totally disabled under the policies unless he is unable to perform *all* the duties of his occupation. On the other hand, Dr. Knott asserts that he is disabled if he is unable to perform *any* duty of his occupation.

■ We find that the construction of the policies' definition of total disability is governed by a series of Texas Supreme Court cases dealing with total disability policies. *Commonwealth Bonding & Casualty Ins. Co. v. Bryant,* 113 Tex. 21, 240 S.W. 893 (1922), involved an insurance policy which provided for the payment of weekly total disability benefits if the insured sustained injuries which would "wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation." The court refused to give a literal interpretation to the policy's definition of total disability. Instead, the court ruled that the insured was totally disabled if he was substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation.

■ In *Great Southern Life Ins. Co. v. Johnson,* 25 S.W.2d 1093, 1097 (Tex. Comm'n App.1931, holding approved), the insurance policy provided for total disability benefits if the insured was "wholly prevented from performing any work for compensation or profit or from following any gainful occupation." The court further stated:

A policy requiring payment for total disability ordinarily is not one of indemnity against loss of income but against loss of capacity to work. Cooley's Briefs on Insurance (2d Ed.) 5536. "Total disability" is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case and on the nature of the occupation or employment and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists *if he is unable to do any substantial portion of the work connected therewith.* (Emphasis added)

Thus, *Johnson* modified *Bryant* by deleting the requirement that every material duty be impacted. The court in *Prudential Insurance Company of America v. Tate,* 162 Tex. 369, 347 S.W.2d 556 (1961), reaffirmed the holdings in *Johnson.* As per the holdings in *Johnson* and *Tate,* Dr. Knott was totally disabled if he was unable to do any substantial portion of the work connected with his occupation.

The holdings in *Johnson* and *Tate* are based on policy grounds which reject the express definitions contained in each of the insurance policies that were at issue. It would appear that the holdings in these cases possibly conflict with the Texas Supreme Court's current approach to construing insurance policies. In *Trinity Universal Insurance Company v. Cowan, supra* at 823, the court held that, when terms are defined in an insurance policy, those definitions control. We would note in this regard that, after the enactment of the ERISA in the 1970s, the vast majority of reported cases involving disability insurance have been litigated in the federal court system. Be that as it may, the holdings in *Johnson* and *Tate* speak directly to the meaning of total disability in an insurance context, and they have not been overruled.

Provident argues that *Johnson* and *Tate* are distinguishable because the policies at issue in this case provide for the payment of partial disability benefits. We disagree with this assessment. The policies defined partial disability as the inability to perform "one or more, but not all" duties. Provident contends that, if one harmonizes the partial disability definition of "one or more, but not all" duties with the definition of total disability, the policies imply that all duties must be impacted in order to constitute total disability. Even if one assumes that the policies contain an implied requirement that all duties be impacted for the total disability provision to apply, *Johnson* and *Tate* are still controlling because those cases rejected express requirements that all duties be affected.

The determination of whether or not Dr. Knott was unable to do any substantial portion of the work connected with his occupation when his total disability benefits were terminated is inherently a fact question. See *Prudential Insurance Company of America v. Tate, supra* at 554. Dr. Knott testified to various procedures which he could not perform as a result of his disability. This testimony raises an issue of fact precluding summary judgment as to the ground that Dr. Knott was not disabled when Provident terminated total disability benefits in 1998. Issue No. 2 is sustained.

 We next address Issue No. 3, which attacks the summary judgment ground alleging that Dr. Knott received the maximum total disability benefits to which he was due because his disability commenced after his 65th birthday. The "policy schedule" sections of each of the policies state as follows: "For periods of disability commencing after the Insured has attained Age 65 ... the Maximum Benefits Periods for Total Disability from Accident or Sickness shall be 24 months." The policies do not define when a period of disability commences.[3] Provident contends that the summary judgment evidence conclusively established that Dr. Knott's disability commenced after his 65th birthday because he filed his claim after his birthday listing the date that he last worked prior to the disability as a date occurring after his birthday. As per *Johnson* and *Tate's* definition of total disability, a period of total disability commences when the insured is unable to do any substantial portion of the work connected with his occupation. The critical inquiry in this proceeding is whether Dr. Knott was unable to do a substantial portion of the work connected with his occupation prior to his 65th birthday in August 1995. Dr. Knott testified that his limitations had remained the same since the accident and that they, therefore, predated his 65th birthday. The fact that he listed a date occurring after his 65th birthday for the "date [he] last worked" does not conclusively establish that his disability commenced after his 65th birthday. Dr. Knott could still be working at his occupation yet unable to do any substantial portion of the work connected therewith. We, therefore, find that a fact question has been raised concerning whether or not Dr. Knott had received the maximum total disability benefits to which he was entitled. Issue No. 3 is sustained.

3. The policies do contain a provision which provides that successive periods of disability will be considered separate periods of disability unless the later period of disability is due to the same or a related cause and commences less than six months from the ending of the previous period of disability. This provision only applies to situations in which one attempts to relate a subsequent period of disability to an earlier period of disability.

Having sustained all summary judgment grounds which defeated Dr. Knott's breach of contract claims against Provident, we reverse the trial court's judgment in this regard and remand Dr. Knott's breach of contract claims against Provident for trial on the merits.

Issues Nos. 4, 5, 6, 7, 10, and 12 focus on Dr. Knott's extra-contractual claims of bad faith and misrepresentation directed at Provident and Gatlin's independent executor. Dr. Knott alleged that Gatlin made misrepresentations to him concerning the policies' coverage. He further alleged that Provident and Gatlin committed violations of TEX. INS. CODE ANN. art. 21.21 (Vernon 1981 & Supp.2002) and the Texas Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE ANN. § 17.41 (Vernon 1987), and breached the duty of good faith and fair dealing. These claims were attacked by several summary judgment grounds. One of the summary judgment grounds alleged that the claims were barred by the applicable statute of limitations which Dr. Knott attacks in Issue No. 6.

The gist of Dr. Knott's extra-contractual claims against Gatlin's independent executor is that Gatlin purportedly represented that the policies would provide total disability benefits if Dr. Knott became disabled from performing any job duty for which he was trained. These representations were allegedly made when Gatlin sold the policies to Dr. Knott in the 1970s. The extra-contractual claims asserted against Provident focus on the denial of his claim on grounds which Dr. Knott believes are inconsistent with his construction of the meaning of total disability under the policies. Dr. Knott did not file this action until 1998. He contends that this action is timely because he was not aware of the deception allegedly committed by Gatlin and Provident until the time that his benefits were terminated in 1998. In other words, he contends that his causes of action against Gatlin and Provident did not accrue until 1998 and that the applicable limitation periods did not begin to run until that time.

A cause of action generally accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex.1998), citing *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990); *Sabine Towing & Transportation Co., Inc. v. Holliday Insurance Agency, Inc.*, 54 S.W.3d 57, 59–60 (Tex.App.-Texarkana 2001, pet'n den'd). In most cases, a cause of action accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996); *Sabine Towing & Transportation Co., Inc. v. Holliday Insurance Agency, Inc.*, *supra* at 60.

Dr. Knott contends that he has been continuously disabled since the plane crash in June 1985 irrespective of the fact that he returned to work full time in August 1985. He initially applied for disability soon after the accident in 1986, but this claim was denied at that time. If his extra-contractual allegations against Gatlin and Provident are correct, then the denial of his initial claim was improper and caused Dr. Knott to suffer an injury at that time. We find that, by virtue of the denial of his initial claim, facts came into existence in 1986 which authorized Dr. Knott to seek a judicial remedy against Gatlin and Provident for the extra-contrac-

tual claims which he now pursues. The applicable statute of limitations have, therefore, long since expired. Issue No. 6 is overruled. To the extent that it challenges the same grounds as Issue No. 6, Issue No. 1 is overruled. In light of our ruling on Issue No. 6, we do not reach Issues Nos. 4, 5, 7, 10, and 12. Rule 47.1.

Finally, Issue No. 11 reads as follows: "Did the trial court err in granting summary judgment in favor of Gatlin and against Dr. James Knott on the basis that Gatlin was not a party to the insurance contract?" The motion for summary judgment filed by Gatlin's independent executor contained a ground based on the allegation that Gatlin was not a party to the insurance polices at issue. It would appear that this ground was included to defeat a possible claim that Gatlin's independent executor was liable to Dr. Knott under a breach of contract theory. Dr. Knott essentially agrees in his brief with the contention that Gatlin was not a party to the insurance policies and, therefore, is not liable under a breach of contract theory. Dr. Knott's brief further shows that

he is only seeking to impose liability against Gatlin's independent executor for extra-contractual claims which would not require privity of contract. Our ruling regarding the expiration of the statute of limitations on Dr. Knott's extra-contractual claims is, therefore, dispositive of Issue No. 11.

The trial court's judgment insofar as it denied Dr. James Knott's breach of contract claim against The Provident Life and Accident Insurance Company is reversed, and that cause is remanded to the trial court. In all other respects, the judgment of the trial court is affirmed.