Opinion filed April 13, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed April 13, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-04-00258-CV 

                                                    __________

 

                STEWMAN RANCH, INC.; O.T. STEWMAN; AND HELEN

                                            STEWMAN,
Appellants

 

                                                             V.

 

                                 DOUBLE
M. RANCH, LTD. Appellee

 



 

                                          On
Appeal from the 32nd District Court

 

                                                          Nolan
County, Texas

 

                                                   Trial
Court Cause No. 18,484

 



 

                                                                   O
P I N I O N

 

The interpretation of the parties= intent in a royalty reservation is at
the center of this appeal.  The reservation
appears in a warranty deed from Stewman Ranch, Inc.; O.T. Stewman; and Helen
Stewman (the Stewmans) to Double M. Ranch, Ltd. 
By summary judgment, the trial court held that the Stewmans reserved
one-half of the royalty interests owned by the Stewmans at the time of the
conveyance rather than one-half of the total royalty.  Because we find that the trial court
correctly interpreted the warranty deed, we affirm.








 The
Stewmans conveyed approximately 8,900 acres by warranty deed to Double M.  The deed contained reservations for recorded
oil, gas, and mineral leases and other recorded reservations of minerals and
royalties.  The deed also contained the
following reservation:

There is, however, excepted and reserved to the
Grantors an undivided one-half (2)
of the royalties to be paid on the production of oil, gas and other
hydrocarbons from the described lands which are presently owned by Grantors for
and during the lives of Helen A. Stewman and O. T. Stewman, Jr.; and, upon the
death of the survivor of them, this retained royalty interest will vest in
Grantee, its successors and assigns.

 

The Stewmans did not own 100% of the royalty interests but,
rather, owned undivided interests of varying amounts under the several tracts
conveyed.  Subsequently, a dispute arose
between the parties regarding ownership of the royalties.  The Stewmans contended they had reserved
one-half of the total mineral interests under the property, while Double M.
claimed that the reservation was of one-half of the royalty interests owned by
the Stewmans at the time of the conveyance.

The parties agree that the deed is
unambiguous.  The determination we are to
make, as a matter of law, is whether the Stewmans reserved one-half of all the
royalty attributable to Athe
described lands@ or only
one-half of the royalty they owned at the time of the conveyance.

The interpretation of an unambiguous document is a
question of law.  We review the trial
court=s
decision de novo.  MCI Telecomm. Corp.
v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999).  We perform that review without considering
parol evidence. Middleton v. Broussard, 504 S.W.2d 839 (Tex. 1974).  We consider the entire document under the Afour corners@
rule.  See JVA Operating Co. v.
Kaiser-Francis Oil Co., 11 S.W.3d 504, 506 (Tex. App.CEastland 2000, pet. denied).  To determine the parties= intention, we look only at what the
parties actually stated in the deed, not what they allegedly meant.  See Esquivel v. Murray Guard, Inc.,
992 S.W.2d 536, 544 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied).   








 The court=s primary concern is to ascertain the
true intention of the parties.  Myers
v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193, 196 (Tex. 1962).  We must assume that the parties intended every
clause to have effect; and, if the terms appear contradictory, we must
harmonize them so that no provision is rendered meaningless.  R & P Enters. v. LaGuarta, Gavrel
& Kirk, Inc., 596 S.W.2d 517, 518-19 (Tex. 1980).  We are to give the language its plain
grammatical meaning unless to do so would defeat the parties= intent.  DeWitt County Elec. Coop., Inc. v. Parks, 1
S.W.3d 96, 101 (Tex. 1999).

Double M. urges us to consider canons that have
been developed for interpreting deeds and reservations.  For example, courts have held that deeds
should be construed to convey the greatest estate possible and that
reservations should be construed against the grantor.  These canons, however, do not apply when the
deed is unambiguous.  See Gore
Oil Co. v. Roosth, 158 S.W.3d 596, 601 (Tex. App.CEastland
2005, no pet.)(utilizing canons of construction only after finding warranty
deed ambiguous);  Large v. T.
Mayfield, Inc., 646 S.W.2d 292, 294 (Tex. App.CEastland
1983, writ ref=d
n.r.e.); see also Bruce M. Kramer, The Sisyphean Task of Interpreting
Mineral Deeds and Leases: An Encyclopedia of Canons of Construction, 24 Tex. Tech L. Rev. 1, 110-11 (1993).

Double M. argues that this case can be resolved
using the rule adopted in Duhig v. Peavy-Moore Lumber Co., 144 S.W.2d
878 (Tex. 1940).  In that case, Duhig
owned a tract of land and one-half of the underlying minerals.  Duhig assigned the land by warranty
deed.  The deed purported to convey all
of the surface and minerals, but it also contained a reservation to the grantor
of one-half of the mineral estate. 
Peavy-Moore ultimately acquired the tract.  A dispute arose between it and Duhig=s descendants over the ownership of the
mineral estate.  The parties agreed that
one-half of the mineral estate was owned by a third party.  Duhig=s
descendants contended that the mineral reservation vested them with the
remaining one-half.  If correct, Duhig=s deed transferred no mineral interest
despite the language of its granting clause. 
The supreme court held that Duhig=s
descendants were estopped from claiming any of the mineral estate and that
Peavy-Moore owned the disputed one-half mineral interest.  Double M. contends that the Stewmans are
likewise estopped from taking their present position.








Duhig is inapplicable to this case because
there has been no failure of title. 
There is a dispute over the interpretation of the mineral reservation,
but not all deed construction disputes constitute a breach of warranty.  The warranty serves to indemnify the
purchaser against a loss or injury he may sustain by a defect in the seller=s title.  Gibson v. Turner, 294 S.W.2d 781, 788
(Tex. 1956).  The warranty clause does
not convey title nor does it determine the character of the title
conveyed.  Davis v. Andrews, 361
S.W.2d 419, 424-25 (Tex. Civ. App.CDallas
1962, writ ref=d
n.r.e.).  Rather, it warrants that the
same estate or any right, title, or interest therein has not been conveyed to
any person other than the grantee and that the property is free from
encumbrances.  Chapman v. Parks,
347 S.W.2d 805, 808 (Tex. Civ. App.CAmarillo
1961, writ ref=d
n.r.e.).

Double M.=s
Duhig argument relies, in part, on the work of its landman, who
researched the title to determine what royalty the parties would receive under
each of the proffered constructions. 
Double M. contends that the parties agreed to split the Stewmans= royalty but that, if the reservation
is interpreted to reserve one-half of the total royalty, Double M. will receive
no royalty under some tracts and only a minimal interest under the
remainder.  The parol evidence rule bars
our consideration of this analysis because both parties agree that the deed is
unambiguous.  Messer v. Johnson,
422 S.W.2d 908, 912 (Tex. 1968); see also Concord Oil Co. v. Pennzoil
Exploration and Prod. Co., 966 S.W.2d 451, 465 (Tex. 1998).

Unlike Duhig, the Stewmans= deed did not purport to convey title
that the grantors did not own.  The deed
here specifically provided that it was subject to the exceptions and
reservations contained in it, and those were set out in four paragraphs of the
deed.  Consequently, the title that the
Stewmans warranted did not include any interest specifically excepted or
reserved.  Duhig does not apply.

The Stewmans argue that this issue can be resolved
by determining whether the reservation refers to Athe
described lands@ or the Aconveyed lands.@  The Stewmans=
argument is based upon a rule of construction developed from two
decisions:  Hooks v. Neill, 21
S.W.2d 532 (Tex. Civ. App.C
Galveston 1929, writ ref=d),
and King v. First Nat=l
Bank of Wichita Falls, 192 S.W.2d 260 (Tex. 1946).  In Hooks, the grantor reserved a fraction
of the minerals under the land conveyed. 
Consequently, the deed reserved a fraction of the mineral estate
conveyed in the deed.  In King,
the deed reserved a fraction of the minerals under the land described.  That deed, therefore, reserved a fraction of
the entire mineral estate.  The Stewmans
argue that the reservation refers to the land described in the warranty deed
and that, therefore, they reserved one-half of the royalty attributable to the
entire property.








This case does not fit within the rule developed
by Hooks and King because of the unique language contained in the
reservation.  The difficulty lies with
the inclusion of the words:  Awhich are presently owned by Grantors.@ 
If this clause modifies the preceding words:  Athe
described lands,@ then the
reservation operates to reserve one-half of the total royalties.  The Stewman deed describes the tracts being
conveyed by survey, abstract, and certificate number.  No other interest is similarly described.  Under this interpretation, one-half of the
royalties from Athe
described lands@ would
necessarily mean one-half of the total royalty. 
If the clause modifies Aroyalties
to be paid,@ then the
reservation means that the Stewmans retained only one-half of the royalty they
owned at the time of the conveyance.

Because the Stewmans owned the surface acreage
being conveyed, as well as some of the underlying minerals, the clause Awhich are presently owned by Grantors@ logically could refer to either Athe described lands@ or to Aone-half
(2) of the royalties to be paid.@ 
To determine whether the clause Awhich
are presently owned by Grantors@
modifies Aroyalties@ or Athe
described lands,@ we refer
to basic rules of grammatical construction. 
See Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex.
1987).  A court shall give a contract its
plain meaning, if possible. Id.

One of the basic rules of grammatical construction
is the doctrine of last antecedent.  That
doctrine provides that relative and qualifying phrases are to be applied to the
words or phrases immediately preceding them, unless to do so would impair the
meaning of the sentence.  City of
Corsicana v. Willmann, 216 S.W.2d 175, 176 (Tex. 1949).  The rule is not inflexible, and neither is it
controlling. Id.  The rule must be
applied with due regard to the entire instrument.  Id. 
The relative or qualifying phrases may be extended further than the
nearest antecedent when clearly required. 
Id.  








Here, Awhich
are presently owned by Grantors@
is a restrictive dependent clause even though it begins with the word Awhich.@   We note that the clause is not set off by
commas, as is the case with a nondescriptive or nonrestrictive clause.  Although punctuation is not controlling in
the interpretation of agreements, it does aid in the interpretation of an
instrument.  Criswell v. European
Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990).   There is no prohibition which requires a
court to ignore punctuation.  Id.  The clause is a descriptive, or
restrictive, one because any other reading would render the clause
superfluous.  There would be no need to
fully describe the lands, to refer to reservations and exceptions, and to then
add a nonrestrictive clause after Athe
described lands.@  If the clause were removed, the sentence
would not change.  A restrictive clause
signals that there are other things in the universe it defines.  A nonrestrictive clause is a signal that
there are no other things in the universe described.  The
Chicago Manual of Style 249-50 (15th ed. 2003); The American Heritage Book of English Usage 39 (1996).  Thus, because we would render the use of Awhich are presently owned by Grantors@ superfluous if we were to find that it
modifies Athe
described lands,@ we must
find a reference that would render the clause meaningful.  As the court said in Willmann, AWe cannot ascribe@ a Afutile@ or Avain@ purpose to the words of the
agreement.  Willmann, 216 S.W.2d
at 176-77.

If we apply the dependent clause Awhich are presently owned by Grantors@ to the phrase Aone-half
(2) of the royalties,@ then we have harmonized and have given
effect to every part of the agreement; and the clause is not futile, vain, or
superfluous.  Id.  The question before this court is: AWhat royalties?@
Because the dependent clause is an adjective clause, it answers that question
in this manner:  the royalties that are
presently owned by grantor and that are to be paid on the production of oil,
gas, and other hydrocarbons from the described lands.  In this manner, we have given effect to every
word in the agreement in its plain grammatical manner.  Simply to apply the doctrine of last
antecedent would impair what we perceive the parties actually meant when they
made the agreement.

We hold that the clause Awhich
are presently owned by Grantors@
refers to and defines Aone-half
(2) of the royalties@ and that the Stewmans reserved a life
estate in one-half of the royalties that they owned at the time of the
conveyance, not one-half of the total royalties.

The Stewmans=
issue on appeal is overruled, and the judgment of the trial court is affirmed.

 

JIM R. WRIGHT

CHIEF JUSTICE

 

April 13, 2006

Panel
consists of: Wright, C.J., and

Strange,
J., and Dickenson, S.J.[1]











[1]Bob Dickenson, Senior Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.